# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-cv-00029-MR-DLH

| | |
|---|---|
| **RAYMOND V. BOWERS,** | ) |
| Plaintiff, | ) |
| vs. | ) **O R D E R** |
| **NORTHERN TWO CAYES COMPANY LIMITED and LIGHTHOUSE REEF RESORT LTD.,** | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss [Doc. 12], Plaintiff's Renewed Motion to Compel the Parties to Arbitrate Disputes, and for the Court to Stay the Current Proceedings, and to Appoint the Arbitrator [Doc. 17], and Plaintiff's Motion for a Preliminary Injunction [Doc. 26].

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Defendants, Northern Two Cayes ("NTC") and Lighthouse Reef Resort Ltd., ("LRRL") (collectively "Defendants" or "Sellers") undertook to market certain real property (the "Property") they owned off the coast of Belize. [Doc. 1 "Complaint" at ¶¶ 18-22]. In October of 2010, the Sellers executed

a Listing Contract with Peaks Real Estate Sotheby's International Realty ("Peaks") to market and sell the Property. [Id. at ¶ 39]. That contract identified the Defendants as the "Seller," Peaks as the "Brokerage Firm," and the Plaintiff as "Broker." [Id.; Doc. 1-5 "Listing Contract" at § 3.1-3.3].

The Listing Contract and its subsequent amendments [Docs. 1-8, 1-9, 1-10] cumulatively provided that notwithstanding the Listing Contract's expiration, Seller would remain obligated to pay Brokerage Firm's commission upon the sale of the Property to certain buyers, including Domico Giannini, the principal of Puerto Azul Belize Ltd. ("Puerto Azul"). [Doc. 1 at ¶¶ 81-82, 92-97]. The Listing Contract expired by its terms on September 29, 2012. Then on March 22, 2013, the Defendants entered into an agreement to sell the Property to Puerto Azul for twenty million dollars ($20,000,000.00). [Id. at ¶¶ 92, 135]. Upon Plaintiff's inquiry regarding the payment of his commission, the Defendants expressed the position that no commission was owed. [Id. at ¶ 136-37].

The Listing Contract also obligated Sellers to "disclose all legal matters concerning the Property and owner entities including corporate papers and agreements and court actions past and pending." [Id. at ¶ 43 quoting Doc. 1-5 at § 27.6]. Plaintiff later discovered that at the time of execution, the Sellers knew but did not disclose that they were involved in legal actions

2

regarding two prior contracts to sell the Property that had failed to close. [Doc. 1 at ¶¶ 25-38].

On or about June 4, 2014, Plaintiff and Peaks demanded mediation and arbitration pursuant to Section 27.2 of the Listing Contract, which provides that, "[m]ediation and arbitration shall be attempted in good faith before any court action is ever attempted due to a dispute." [Id. at ¶¶ 141, 148; quoting Doc. 1-5 at § 27.2]. Mediation took place on July 7, 2014, but the parties did not reach a settlement. [Id. at ¶ 152]. On January 9, 2015, Nels Cary, owner of Peaks, executed a document purportedly assigning all rights and obligations of the Listing Contract and Amendments owned by Peaks to the Plaintiff. [Id. at ¶¶ 158-59]. On January 20, 2015, Plaintiff demanded arbitration pursuant to 27.2 of the Listing Contract, but Defendants did not respond. [Id. at ¶¶ 160-61].

Plaintiff filed the instant action on February 12, 2015. [See Doc. 1]. In his Complaint, Plaintiff presents claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and unfair and deceptive trade practices.[1] [Id.]. In support of his claims, Plaintiff alleges that the Defendants: anticipatorily breached their obligation to pay him a

---

[1] On March 23, 2015, Plaintiff filed an Amendment to the Complaint, adding Plaintiff's claim for unfair and deceptive trade practices. [Doc. 5].

3

commission on the sale of the Property to Puerto Azul; failed to disclose certain encumbrances and legal disputes involving the two failed agreements to sell the Property as required and failed to resolve those encumbrances and legal disputes; and failed to arbitrate; all as required by the Listing Contract, as amended. [Id.].

On April 3, 2015, the Plaintiff filed a Motion to stay the proceedings, compel arbitration, and appoint an arbitrator. [Doc. 9]. On April 8, 2015, this Court denied Plaintiff's Motion without prejudice because the Defendants had not yet made appearances. [Doc. 10]. The Defendants filed a Motion to Dismiss on April 10, 2015. [Doc. 12]. On May 8, 2015, the Plaintiff responded to the Defendants' Motion to Dismiss [Doc. 22] and on May 18, 2015, the Defendants replied thereto. [Doc. 24].

On April 20, 2015, the Plaintiff renewed his motion to compel arbitration, appoint an arbitrator, and stay the proceedings. [Doc. 17]. Defendants responded, conceding that the Listing Contract requires arbitration, but arguing that Plaintiff lacks standing to enforce that provision.[2] [Id.]. On May 15, 2015, the Plaintiff responded thereto. [Doc. 23].

---

[2] The parties also dispute whether the Federal Arbitration Act ("FAA") applies to this case, and whether any arbitration herein would be binding. [Docs. 17, 21].

On December 7, 2015, the Plaintiff filed a Motion for Preliminary Injunction requesting this Court to restrain the Defendants from distributing all proceeds from the sale pending resolution of their dispute. [Doc. 26]. The Defendant responded in opposition [Doc. 27] and the Plaintiff replied thereto [Doc. 28].

Having been fully briefed by the parties, these matters are now ripe for disposition.

## II.  DISCUSSION

The parties agree that the Listing Contract, as amended, requires that "arbitration shall be attempted in good faith before *any court action* is ever attempted due to a dispute." [Docs. 9 at 3, 21 at 1 (emphasis added)]. It is further undisputed that no arbitration has taken place.  Accordingly, the threshold issue is whether this Court will compel arbitration.  If it is ordered, any outstanding disputes that are covered by their arbitration clause may be resolved as agreed -- by an arbitrator.

The Federal Arbitration Act ("FAA") governs the resolution of private disputes through arbitration.  9 U.S.C. § 1 et seq.  Where a valid arbitration agreement exists and the issues fall within its purview, a district court has no choice but to compel arbitration. Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002).  A litigant may compel arbitration under the FAA if he

5

can demonstrate: 1) the existence of a dispute between the parties; 2) a written agreement that contains an arbitration provision which purports to cover the dispute; 3) the relationship of the transaction to interstate or foreign commerce, and 4) the failure, neglect or refusal of the defendant to arbitrate the dispute. Id. at 500-01.

Here, it is undisputed that the first, third, and fourth elements are satisfied. Plaintiff has demonstrated the existence of a dispute by alleging that the Defendants have breached the terms of the Listing Contract. The transaction relates to foreign and interstate commerce in that the Defendants/Sellers, organized under the laws of the Country of Belize, retained the Plaintiff, a citizen of Colorado, to sell Property located off the coast of Belize. Finally, the Defendants have failed, neglected, or refused to arbitrate. As to the second element, however, the Defendants argue that there is no written agreement covering the dispute which the Plaintiff can enforce because the Plaintiff was not a party to the Listing Contract.[3]

Whether there exists an enforceable written agreement providing for the arbitration of a particular dispute is a question of state law governing

---

[3] The Defendants also assert that the Plaintiff breached the agreement by filing suit before completing arbitration. It is undisputed, however, that Plaintiff demanded arbitration and Defendants failed to cooperate. Defendants do not dispute that the Plaintiff did what was in his power to complete arbitration. Therefore, this argument by Defendants need not be addressed further.

contract formation. Adkins, 303 F.3d at 501. In North Carolina,[4] the rule is well-established "that a third person may sue to enforce a binding contract or promise made for his benefit even though he is a stranger both to the contract and to the consideration." Carl v. State, 192 N.C. App. 544, 551, 665 S.E.2d 787, 794 (2008) (quoting Am. Trust Co. v. Catawba Sales & Processing Co., 242 N.C. 370, 379 88 S.E.2d. 233, 239-40 (1955)). Before that third person can sue on the agreement, however, he must at least show that it was intended for his direct benefit. Id.

Here, it is beyond dispute that the Listing Contract was intended for Plaintiff's direct benefit. The Plaintiff, Raymond V. Bowers, is specifically identified by name and defined in the Listing Contract as "Broker" [Doc. 1-5 at § 3.3], and the Listing Contract expressly provides that "[n]othing in this Seller Listing Contract shall be deemed to inure to the benefit of any person *other than* Seller, *Broker*, and Brokerage Firm." [Id. at § 29 (emphasis added)]. Moreover, the Listing Contract provides for burdens and benefits inuring directly to Plaintiff such as: "[i]f an 'Excluded Buyer' buys the property and no commission is due, then [S]eller shall pay [B]roker for marketing expenses and fees accrued during the listing period" [Id. at § 7.4]; "Seller

---

[4] The parties agree that North Carolina law governs. [Docs. 21 at 4; 23 at 2].

7

agrees to conduct negotiations for the Sale of the Property only through Broker . . . " [Id. at § 10.1]; and "in consideration of the services to be performed by Broker, Seller agrees to pay Brokerage Firm as follows . . . ." [Id. at § 7.1]. Therefore, notwithstanding the fact that Plaintiff was not a signatory to the Listing Contract, he is clearly an intended direct beneficiary and thus may enforce the arbitration provisions therein. Moreover, Peaks' assignment to Plaintiff of all of its rights and obligations under the Listing Contract independently establishes Plaintiff's standing to enforce that contract's provisions. See Morton v. Thornton, 259 N.C. 697, 699, 131 S.E. 2d 378, 380 (1963).

This Court also concludes that the Listing Contract covers all of the parties' outstanding disputes. The Listing Contract provides that "arbitration shall be attempted in good faith before any court action is ever attempted due to a dispute." [Id. at § 27.2]. Here, the parties dispute whether the Defendant violated the terms of the Listing Contract and whether the Plaintiff is entitled to any remedy for such alleged violation. [Docs. 1, 5, 12, 22, 24]. The parties also dispute whether the Plaintiff should be entitled to injunctive relief. [Docs. 26-28]. Since these matters all qualify as "a dispute," they are

all subject to resolution by an arbitrator pursuant to the parties' agreement.[5] See Adkins, 303 F.3d at 500-01.

Having concluded that the arbitration provision within the Listing Contract is valid and binding, that Plaintiff may enforce the provision, and that the parties' disputes are covered by the arbitration provision, this Court will compel arbitration and grant a stay of this case until "arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Renewed Motion to Compel the Parties to Arbitrate Disputes, and for the Court to Stay the Current Proceedings, and to Appoint the Arbitrator [Doc. 17] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Plaintiff's Motion is **GRANTED** insofar as the parties are hereby ordered to arbitrate, and that this case is stayed pending arbitration in accordance with the terms of the Listing Contract. In all other respects, the Plaintiff's Motion is **DENIED.** The Court directs the parties that no later than **April 20, 2016**, they shall confer and agree upon an arbitrator and date(s) of arbitration. The Court further

---

[5] The parties also dispute whether any such arbitration is binding. The presentation of this issue is premature. There is no arbitration award, and there is no pending motion regarding the confirmation of such award.

directs the parties that such arbitration shall be completed no later than **September 31, 2016**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss [Doc. 12] is **DENIED WITHOUT PREJUDICE** as premature.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Preliminary Injunction [Doc. 26] is **DENIED WITHOUT PREJUDICE** as premature.

**IT IS SO ORDERED.**

Signed: March 15, 2016

Martin Reidinger
United States District Judge