# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:15-cv-00029-MR-DLH

RAYMOND V. BOWERS,     )
                             )
          Plaintiff,     )
                             )
   vs.                   )      **O R D E R**
                             )
NORTHERN TWO CAYES     )
COMPANY LIMITED and     )
LIGHTHOUSE REEF RESORT   )
LTD.,                   )
                             )
          Defendants.   )
_____ )

THIS MATTER is before the Court on the Plaintiff's "Motion for Confirmation of Arbitrator's Award and for Remand to Arbitrator for Clarification of Remaining Ambiguities" [Doc. 43] and the Plaintiff's "Motion for Consideration of New Facts and Need for Making Judgment" [Doc. 46]. The Defendants have responded to Plaintiff's Motions [Docs. 44, 47], and the Plaintiff has replied thereto [Docs. 45, 48].

## I.    PROCEDURAL AND FACTUAL BACKGROUND

Much of the procedural and factual background relevant to the disposition of these motions has been previously outlined by the Court. [Docs. 29, 36, 42].  Briefly, for ease of reference, the Court sets forth the

following recitation of facts. The Defendants, Northern Two Cayes ("NTC") and Lighthouse Reef Resort Ltd., "LRRL") (collectively "Defendants" or "Sellers") undertook to market two islands (the "Property") they owned off the coast of Belize. [Doc. 1 at ¶¶ 18-22]. In October of 2010, the Defendants executed a Listing Contract with Peaks Real Estate Sothebys International Realty ("Peaks") to market and sell the Property. [Id. at ¶ 39]. The Listing Contract listed the Plaintiff, Raymond V. Bowers, as "Broker"; "Peaks" as "Brokerage Firm"; and the Defendants as "Sellers." [Id.; Doc. 1-5 at ¶¶ 3.1-3.3]. For reasons previously identified by the Court, the Plaintiff is an intended direct beneficiary of the Listing Contract and may enforce the provisions therein.[1] [Doc. 29 at 3, 6-8].

On March 22, 2013, the Defendants entered into an agreement with Puerto Azul Belize Ltd. ("PABL") to sell the Property for twenty million dollars ($20,000,000.00). [Doc. 1 at ¶¶ 92, 135]. On the Plaintiff's inquiry regarding the payment of his commission, the Defendants asserted the position that no commission was owed. [Id. at ¶¶ 136-37]. A dispute also arose regarding whether the Defendants breached the Listing Contract by failing to disclose

---

[1] As further grounds for the Plaintiff's right to enforce the provisions of the Listing Agreement, the Court held that the assignment of all rights and obligations of the Listing Contract and Amendments to the Plaintiff by Peaks on January 9, 2015, "independently establish[ed] Plaintiff's standing to enforce that contract's provisions." [Doc. 29 at 3, 8 (citing Morton v. Thornton, 259 N.C. 697, 699, 131 S.E.2d 378, 380 (1963)).].

legal matters and court actions concerning the Property. [Id. at ¶¶ 25-38, 43; Doc. 1-5 at ¶ 27.6]. On July 7, 2014, as a result of these disputes, the parties engaged in a mediation pursuant to the Listing Contract. [Doc. 1 at ¶ 152]. No settlement was reached. [Id.].

On January 20, 2015, the Plaintiff demanded arbitration pursuant to Section 27.2 of the Listing Contract. [Id. at ¶¶ 160-61]. Section 27.2 of the Listing Contract provides, in full:

> 27.2: JURISDICTION: Jurisdiction for this Listing Contract shall be in the state of North Carolina in case of any dispute concerning this listing contract. Mediation and arbitration shall be attempted in good faith before any court action is ever attempted due to a dispute.

[Doc. 1-5 at ¶ 27.2]. The Defendants did not respond to this demand for arbitration. [Doc. 1 at ¶ 161]. On February 12, 2015, the Plaintiff filed the instant action. [See Doc. 1]. Before the Defendants made an appearance in the case, Plaintiff made a motion to compel arbitration, which the Court denied as premature. [Docs. 9, 10]. Once the Defendants appeared, the Plaintiff timely renewed his motion to compel arbitration. [Doc. 17]. The Court then stayed the proceedings and compelled the parties to arbitrate in accordance with the terms of the Listing Contract. [Doc. 29]. In the Order compelling arbitration, the Court noted, "[t]he parties also dispute whether

any such arbitration is binding.  The presentation of this issue is premature.  There is no arbitration award, and there is no pending motion regarding the confirmation of such award."  [Id. at 9].

Thereafter, the parties selected Gary S. Hemric ("Arbitrator") to be the arbitrator in this matter.  The Arbitrator conducted a three-day arbitration hearing from September 14 through 16, 2016.  [Docs. 37 at 1, 40 at 2].  In proceeding to arbitration, the parties agreed to submit the dispute for administration by the Arbitrator pursuant to the AAA Commercial Rules.  [See Doc. 43-6 at 2].

The Arbitrator issued an Opinion and Award (the "O&A") on October 13, 2016.  In the O&A, the Arbitrator found that the Plaintiff "was a procuring cause" of the initial contact with the representatives of PABL who went under contract with the Defendants for the sale of the Property.  [Doc. 43-6 at 6 ¶ 10].  Accordingly, the Arbitrator concluded that the Plaintiff is "entitled to receive a sum of money from [the Defendants] equal to 4% of the total Gross Selling Price" paid by PABL upon the closure of escrow for the sale of the Property.  [Id. at ¶ 1].  In the event that PABL did not close on the purchase, the Arbitrator ordered the Defendants to pay "a sum equal to 4% of any dollar amount heretofore paid by PABL to [the Defendants] as a deposit, binder, security for option or other funds intended by those parties to be a portion of

4

the total consideration paid for the sale of the two islands, and which funds will be retained by [the Defendants] notwithstanding failure of the transaction to close." [Id. at ¶ 2]. The Arbitrator also ordered the Defendants to pay the Plaintiff $80,346.00 "as reimbursement of costs and expenses including attorneys' and legal fees." [Id. at 7 ¶ 5].

On December 16, 2016, Plaintiff filed a "Motion for Remand to Arbitrator for Clarification, Extension of Injunctive Relief, and Ruling that Arbitration Is Binding." [Doc. 37]. In relevant part, the Court denied Plaintiff's motion to remand because there was no basis on which the Court could order remand without "such award first being served upon the adverse party and presented to the court for confirmation pursuant to section 9 of the FAA." [Doc. 42 at 4]. The Court also reiterated that it had no opinion regarding "whether the award is binding on the parties such that 'a judgment of the court shall be entered upon the award made pursuant to the arbitration,'" as the Award was not presently before the Court. [Id. at 4 n.2].

On February 1, 2017, the Arbitrator issued a Supplemental Opinion and Award ("Supplemental O&A") in order to address certain requests for clarification made by the Plaintiff. [Doc. 43-6 at 8-9]. In the Supplemental O&A, the Arbitrator made a number of clarifications of the O&A, including the following:

1.     The Award of $80,346.00 in costs and attorney's fees to [the Plaintiff] is completely separate and apart from the payment of any commission or other funds by [the Defendants], incidental to the sales contract with PABL; that amount of $80,346.00 is payable if the parties agree to accept the terms of the O&A and perform them or when Judge Reidinger confirms the Award and enters judgment upon it, not before.

2.     The award of compensation to [the Plaintiff] is intended to be calculated by taking 4% of either the Gross Selling Price, which the arbitrator understands to be $20,000,000.00, for a payment of $800,000.00, payable incidental to and at the time of closing of the transaction of sale and purchase OR that same 4% figure applied to the total amount of any and all sums previously deposited with or paid to [the Defendants] by PABL in connection with the sale of the two islands, and which funds are ultimately retained by [the Defendants], even if the sale transaction does not close. That payment would become due when it is determined finally that PABL will not close the sale transaction and [the Defendants] are entitled to retain any funds heretofore paid by PABL to that point. The arbitrator did not determine and has not ruled that $3,000,000.00 has previously been paid by PABL to [the Defendants] to date; however, if that is the case and the sale does not close and there are no further payments by PABL to [the Defendants], then the amount to be paid to [the Plaintiff] is 4% of that $3,000,000.00 figure, or $120,000.00.

[Id.].

On February 21, 2017, the Plaintiff moved this Court to confirm the Award and also to remand this matter to the Arbitrator for further clarification

of the O&A, as supplemented. [Doc. 43]. On July 5, 2017, Plaintiff filed a Motion for "Consideration of New Facts and Need for Making Judgment," which purported to "update" the Court with "new facts" that Plaintiff contends are relevant to the Court's consideration of Plaintiff's motion to confirm the arbitration award. [Doc. 46].

Having been fully briefed by the parties, these matters are now ripe for disposition.

## II.    ANALYSIS

Before the Court can address the Plaintiff's motion for confirmation, the Court must first determine whether the parties' contract provided for binding arbitration.

The Federal Arbitration Act (FAA) embodies a strong federal policy in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (stating that § 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements"); Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475-76 (1989) (stating that in interpreting an arbitration agreement, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration").

Arbitration presents a number of advantages for litigants. The arbitration process is generally a quicker, more informal, and less costly process than civil litigation. It also allows parties to control the selection of the decisionmaker and to seek an arbitrator who may have specialized knowledge in the subject matter of the dispute, such as construction or securities. Significantly, arbitration also relieves some of the litigation burden placed on the courts. Arbitration, however, is by its nature a creature of contract. Courts have jurisdiction to resolve civil disputes through litigation and can only require resolution of those disputes by arbitration if the parties have agreed to that method of alternative dispute resolution.

This case has presented three separate questions for resolution by the Court. First, did the parties agree to arbitrate their dispute? Second, if yes, did the parties agree to a binding arbitration, that is, to have the arbitration decision reduced to a final judgment? And third, should that final award be confirmed?

The Court has already answered the first of these issues in the affirmative. Section 2 of the FAA provides that a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2.  Applying that provision, in light of the strong federal policy favoring arbitration, the Court has previously held that the parties' contract constitutes a valid, enforceable agreement to arbitrate and therefore ordered the parties to arbitration.[2]  [Doc. 29].  That arbitration has now occurred, and the Plaintiff has returned to this Court for confirmation of the award.  Accordingly, the Court now must confront the second issue presented, namely, whether that arbitration is binding.

Section 9 of the FAA provides, in pertinent part, as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title….

9 U.S.C. § 9.

Ordinarily, the question of arbitrability is one for the Court.  If arbitration is found, the question of the construction of the agreement is generally one for the arbitrator.  One exception to this rule is the issue of whether the award itself is binding, which is a question of the Court's jurisdiction under § 9.  <u>See</u>

---

[2] At that time, the Court deferred ruling on the issue of whether such arbitration was binding, noting that presentation of the issue was "premature."  [Doc. 29 at 9 n.5].

Rainwater v. National Home Ins. Co., 944 F.2d 190, 192 (4th Cir. 1991) ("a court has jurisdiction to confirm an award only if the parties have agreed that the award is final"). Because arbitration is a creature of contract, an agreement to arbitrate is not binding unless *the parties agree* that it is binding. See Deo v. Meier, No. 5:11-cv-602-FL, 2012 WL 7078039, at *6 (E.D.N.C. July 18, 2012) (Jones, Mag. J.), memorandum and recommendation adopted by, 2013 WL 5313231 (E.D.N.C. Feb. 12, 2013) (Flanagan, J.). Thus, the Court has no jurisdiction to confirm an award unless the parties agreed to a binding arbitration.

"In construing an arbitration agreement, courts must 'apply ordinary state-law principles that govern the formation of contracts.'" Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1210 (9th Cir. 1998) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). In North Carolina,[3] "[w]hen the language of the arbitration clause is clear and unambiguous, we may apply the plain meaning rule to interpret its scope." Epic Games, Inc. v. Murphy-Johnson, 785 S.E.2d 137, 143 (N.C. Ct. App. 2016) (citation and internal quotation marks omitted). "The starting point of course is the agreement itself, since an agreement to arbitrate is a contract and must be interpreted like any other contract." Rainwater, 944 F.2d at 192.

---

[3] The parties agree that North Carolina law governs. [Docs. 21 at 4, 23 at 2].

The parties need not specifically parrot the language of § 9 or explicitly state in their contract that the arbitration agreement is "binding" or that the arbitrator's decision "can be reduced to judgment." There is no magical incantation that results in a binding arbitration agreement. Section 9 of the FAA only "requires *some* manifestation of the agreement to have judgment entered in the contract itself." Oklahoma City Assocs. v. Wal-Mart Stores, Inc., 923 F.2d 791, 795 (10th Cir. 1991) (emphasis in original). As such, it does not take much to manifest an intent to be bound.

An agreement to engage in binding arbitration can be implied by the language in the parties' agreement because it would be an unusual (but not unheard of) situation where the parties agreed to a lengthy alternative dispute resolution process before commencing litigation *de novo*. The strong federal policy in favor of arbitration, and the cost and time savings resulting from this alternative dispute resolution process, would obviously be thwarted if the arbitration required by the parties' agreement is merely a detour before commencing litigation to resolve the parties' dispute. Accordingly, the strong federal policy favoring arbitration necessarily implies a policy favoring that any such arbitration be binding.[4]

---

[4] After all, "arbitration" itself means a binding decision. The root of the word "arbitrate" comes from the Latin *arbitrātus*, which means "to render judgment." See Webster's Third New Int'l Dictionary 110 (2002). Even Black's Law Dictionary refers to the term "binding

Courts have recognized that the threshold is very low for finding an arbitration agreement to be binding. Some courts have found that *any* language in an arbitration agreement indicating that an award is final and binding is sufficient to authorize the court to enter judgment on the award under § 9. For example, a reference to arbitration "to resolve" the parties' dispute implies a binding agreement, because the term "resolves" implies a firm or final decision. See I/S Stavborg v. National Metal Converters, 500 F.2d 424 (2d Cir. 1974); Deo, 2012 WL 7078039, at *7. Other courts have held that a parties' reference within their agreement to the AAA Rules, because such rules relate only to binding arbitration, is enough to make their arbitration binding. See Rainwater, 944 F.2d at 193-94; see also Oklahoma City, 923 F.2d at 795 (holding that parties could implicitly consent to AAA Rules and entry of judgment, but found no evidence of such consent where arbitration agreement did not refer to AAA).

Looking to the provisions of the parties' contract in the present case, the parties agreed that that "[m]ediation and arbitration shall be attempted in good faith before any court action is ever attempted due to a dispute." [Doc. 1-5 at ¶ 27.2]. Clearly, by using the term "shall," the parties intended that

---

arbitration" as being redundant. See Black's Law Dictionary 125 (10th ed. 2014). In light of these commonly accepted meanings, the concept of a "non-binding arbitration" is something of an oxymoron.

alternative dispute resolution was mandatory prior to the initiation of litigation. Hence, the Court ordered the parties to arbitration. [Doc. 29]. This still begs the question, however, of whether such arbitration was intended to be binding. The remainder of this clause, "before any court action is ever attempted," does not answer this question. That phrase could mean that the dispute had to be resolved by arbitration before the parties could come to a court to confirm such an award. On the other hand, the word "attempted" could have been intended to mean that the parties must seek to resolve any dispute, to *try* to resolve the matter, before initiating *de novo* litigation. Notably, however, the parties used the term "attempted" twice in this one particular provision in reference to both alternative dispute resolution and court action; the loose usage of this term with reference to both arbitration and court action indicates to the Court that the parties meant that arbitration was to be "undertaken" rather than merely "tried" before any court action was filed. As such paragraph 27.2 merely reiterates that arbitration is required, but does not answer the question of whether such arbitration would be binding.

Paragraph 26 of the parties' contract, however, gives a little more guidance. It provides that: "[i]n the event of any arbitration or litigation relating to this Seller Listing Contract, the arbitrator or court shall award to

the prevailing party all reasonable costs and expenses, including attorney and legal fees." [Doc. 1-5 at ¶ 26]. The term "prevail" is defined as "to gain victory by virtue of strength or superiority." Webster's Third New Int'l Dictionary at 1797. The use of the term "prevailing party" is significant, as there is no party that would be deemed to have "gained victory" in the event of a non-binding arbitration. Thus, the use of the term "prevailing party" in reference to the arbitration implies that such arbitration would yield a final decision. The use of the phrase "in the event of *any* arbitration" implies that the contract contemplates *any* arbitration that is undertaken will be binding. Moreover, the reference to "the arbitrator *or* court" awarding fees contemplates an arbitration that may be followed by a court proceeding confirming the determination of the arbitration. Notably, paragraph 26 does not refer to mediation, only to arbitration and litigation. This implies that if the parties had settled their dispute through mediation (an alternative dispute resolution method that results in no "prevailing party"), then no fees would be awarded. It further implies that the parties contemplated one party prevailing over another in arbitration, i.e., a binding and final determination by an arbitrator.[5]

---

[5] Interpreting paragraph 26 any other way leaves open the door to the possibility of an absurd result. If the required arbitration is not binding, and A "prevails" in such non-binding arbitration (i.e., the arbitrator rules that A is right in all respects) and then B

For all of these reasons, the Court concludes that paragraphs 26 and 27.2, when taken together, make clear that the parties intended that arbitration is required and if there is any arbitration undertaken, it is to be binding.[6]  Admittedly, the parties' agreement is not the pinnacle of clarity. The law, however, is clear.  In light of the strong preference for the efficient resolution of disputes by arbitration, not much is required for the parties to indicate their agreement to be bound by the arbitration procedure in which they agree to participate.  The agreement between the parties – though inartful – calls for binding arbitration.

Even if the parties' agreement to arbitrate were ambiguous – which the Court concludes it was not – the parties' conduct subsequent to the execution of the agreement would lead the Court to conclude that the provision requires binding arbitration.  See Lynn v. Lynn, 202 N.C. App. 423, 432, 689 S.E.2d 198, 205 (2010) ("Where the language presents a question of doubtful meaning and the parties to a contract have, practically or otherwise, interpreted the contract, the courts will ordinarily adopt the

---

proceeds to re-litigate in court and B "prevails" in that forum, then B is in the position of having won the case, but being required to pay arbitration fees to A as the "prevailing party" in the pre-litigation arbitration.

[6] Although not dispositive of the jurisdictional question under § 9, the Court notes that the Arbitrator clearly viewed the parties' agreement as requiring binding arbitration.  [See Doc. 43-6 at 1-3].

construction the parties have given the contract *ante litem motam.*") (quoting

Davison v. Duke University, 282 N.C. 676, 713-14, 194 S.E.2d 761, 784

(1973)).  The arbitrator found as fact, and the parties do not dispute, that the

parties agreed to proceed in the arbitration in accordance with the AAA

Rules.   Because the AAA Rules contemplate binding arbitration, an

agreement to proceed under the AAA Rules can be construed as an

agreement to be bound by the final arbitration award.[7]  Rainwater, 944 F.2d

at 193-94.

In summary, while the parties' arbitration provision (paragraph 27.2)

taken alone is less than clear as to whether it calls for binding arbitration, the

Court must construe the contract as a whole.  Taking paragraph 27.2 along

with paragraph 26 -- the only other provision referencing arbitration – the

---

[7] Even if the Court concluded that the parties' contract called for non-binding arbitration, the parties' subsequent agreement to proceed under the AAA Rules would have constituted an oral modification of that agreement.  While the Tenth Circuit has held that a subsequent agreement to proceed under the AAA Rules does not modify an otherwise unambiguous agreement to engage in non-binding arbitration, see Oklahoma City Assocs., 923 F.2d at 795, that holding was premised on the fact that the contract at issue had an explicit provision requiring all modifications to be in writing.  Id. at 795 n.3.  The parties' contract here has a similar provision.  [See Doc. 1-5 at 9 ¶ 31 ("No subsequent modification of any of the terms of this Listing Contract shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.")].   North Carolina law, however, negates provisions attempting to prohibit oral modifications of contracts.  See Son-Shine Grading, Inc. v. ADC Constr. Co., 68 N.C. App. 417, 422, 315 S.E.2d 346, 349 (1984).  Thus, even if the Court had determined that the contract called for non-binding arbitration, the parties' subsequent agreement to submit to the AAA Rules (and thus to binding arbitration) would have been construed as a modification of that contractual provision.

Court concludes that the language used is sufficient for the Court to conclude as a matter of law that the contract requires binding arbitration.

Having determined that the parties agreed to a binding arbitration, the Court now turns to the issue of confirmation. As required by the FAA, the party seeking to confirm an arbitration award must file with the Clerk of Court certain documents, including but not limited to, the agreement containing the arbitration clause, the award, and those papers bearing upon the parties' application to confirm, modify, or correct the award submitted previously to any other court. 9 U.S.C. § 13(a)-(c). The documents required by § 13 have been filed and made a part of the record before this Court. The Court concludes that the Plaintiff's filings comply with § 13 and establish the basis for confirming the final award.

In his motion seeking confirmation, the Plaintiff also requests a remand to the arbitrator for certain "clarifications" of the Opinion and Award, as supplemented ("O&A"). Specifically, the Plaintiff contends that the following terms of the O&A remain ambiguous: (1) the amount of the award; (2) the event or events which would trigger the Defendants' obligation to pay the award; (3) the method of enforcement available to the Plaintiff; and (4) the timing of the payment of the award. [Doc. 43-1 at 6-11]. In his subsequent motion, the Plaintiff contends that additional events have occurred, which

"lessen the number of clarifications needed to clearly understand the award."

[Doc. 46 at 2]. The Plaintiff contends, however, that some clarifications are still required from the arbitrator. [Id. at 2-3]. The Court will address each of the Plaintiff's requests for clarification in turn.[8]

First, the Plaintiff requests clarification of the amount of the award. Specifically, the Plaintiff argues that the O&A is unclear as to "the dollar amount" upon which his 4% award will be based. [Doc. 43-1 at 6-7].

The O&A requires no clarification in this regard. The O&A, as supplemented, makes clear that the Plaintiff is entitled to 4% of "of any dollar amount heretofore paid by PABL" and "retained by" the Defendants. [Doc. 43-6 at 9]. The record before the Court shows that the sales contract has been terminated and therefore the sale will not close. Likewise, by operation of the sales contract, the money paid to the Defendant by PABL is now non-refundable. The only unanswered question remaining is the precise amount of money that was paid (i.e., the amount from which the Plaintiff's award is

---

[8] Notably, the Defendants have not sought to modify or vacate the arbitration award for any reason permitted under the FAA. See 9 U.S.C. § 10 (setting forth the permissible grounds for seeking vacatur of an arbitration award), 9 U.S.C. § 11 (setting forth the permissible grounds for seeking modification of an arbitration award). Their sole objection to the confirmation of the O&A, as supplemented, is based upon their argument that the parties agreed only to non-binding arbitration. For the reasons set forth above, that argument is rejected. To the extent that the Court concludes that the parties intended their arbitration to be binding, the Defendants contend that the arbitration award is clear and remand to the arbitrator is unnecessary. [Doc. 44 at 2].

to be calculated).  The Plaintiff contends that PABL paid the Defendants $3,125,000, and points to various e-mails and contracts executed by the Defendants in support of that figure.  [See Docs. 43, 46].  The Defendants do not directly dispute the Plaintiff's calculation, but neither do they confirm it, arguing instead that the actual amount paid is currently "of no consequence" and can be determined through post-judgment discovery. [Doc. 44 at 4].[9]

With the confirmation of this award, the Court will direct the parties to confer with each other in an effort to provide a stipulation to the Court of the amount paid by PABL and retained by the Defendants so that a judgment in favor of the Plaintiff can be entered.  If the parties cannot so stipulate, they shall have thirty (30) days to submit supplemental briefs, not to exceed five (5) pages, along with any evidence for the Court to consider regarding the

---

[9] Complicating matters is the fact that, according to documents filed by the parties, the principals of PABL have been arrested and charged by Italian authorities with a massive conspiracy involving a fraudulent investment scheme centered on the development of the very property at issue in this action.  The Defendants contend that if the Italian government or any of the defrauded investors seek forfeiture of funds from the Defendants as proceeds of PABL's fraud, such forfeited amounts would not be "retained by" the Defendants and therefore may be excluded from the Plaintiff's recovery.  There is no indication in the record, however, that any forfeiture proceedings have begun or that such proceedings are even likely to commence in the future.  As such, the Defendants' argument regarding the potential forfeiture of these funds at some possible point in the future is simply conjectural.

amount paid by PABL.  The Court may then consider whether remand to the arbitrator is necessary on this limited issue.

Second, the Plaintiff argues that the O&A must be clarified as to when the Defendants' obligation to pay the 4% "of any dollar amount heretofore paid" arises.  [Doc. 43-1 at 7-8].  In his Motion for Consideration of New Facts, the Plaintiff concedes that recent events, namely the Defendants' termination of the Purchase and Sale Agreement with PABL, renders this request for clarification moot.  [Doc. 46-1 at 5-6].

Third, the Plaintiff seeks clarification of paragraph 4 of the O&A, which provides that "[t]his Award is intended to create, *to the extent possible*, a charge or obligation imposed upon the real property comprising Northern Two Caye and Sanborn Caye to pay the amount set forth herein *upon closing of the sale transaction between PABL and [Defendants]."*  [Doc. 43-6 at 7 ¶ 4 (emphasis added)].  There is no need for clarification of that provision.  It is clear that any obligation that would arise out of this provision applies only "upon closing of the sale transaction between PABL and Defendants."  [Id.]. Because this sale has not occurred (and will not occur), this provision of the O&A is simply immaterial.  To the extent that the Plaintiff contends this provision contemplates requiring the Defendants to execute a Deed of Incumbrance (a lien in Belizean parlance) to secure the Plaintiff's judgment

[see Doc. 43-1 at 9 n.3], the Arbitrator rejected the Plaintiff's proposal to include such a requirement.  [See Doc. 37 at 9 (acknowledging that Arbitrator refused to require Defendants to execute and register a Deed of Incumbrance].  If the Plaintiff wishes to impose a "charge or obligation" on the Defendants' property, the Plaintiff must seek domestication of the confirmed arbitration award in Belize.[10]  It will then be the task of the courts in Belize to determine whether a "charge or obligation" should be imposed on the Defendants' property.

Finally, the Plaintiff argues that remand is required so that the Arbitrator can clarify the "multiple contradictions in and between the O&A and the Supplemental [O&A] as to WHEN the awards must be paid."  [Doc. 43-1 at 9-11].  Read together, however, the O&A and the Supplemental O&A present no inconsistencies.  Paragraph 2 of the O&A provides that, in the event the transaction between PABL and the Defendants does not close, the Plaintiff is entitled to 4% of the funds paid by PABL and retained by the Defendants.  [Doc. 43-6 at 6 ¶ 2].  The Supplemental O&A simply repeats that the 4% of the funds already paid to and retained by the Defendants does not become due until it is determined that the transaction between PABL and

---

[10] The Defendants, as Belizean companies, concede that the Belizean courts retain jurisdiction over them as well as the subject property, which is also located in Belize. [Doc. 44 at 7 n.3].

Defendants will not close and the Defendants are entitled to retain any funds paid by PABL. [Doc. 43-6 at 9 ¶ 2]. There is no contradiction to be reconciled here.

The Plaintiff further contends that there are "two contradictory deadlines" for the payments of costs and expenses. [Doc. 43-1 at 10]. Again, however, there is no inconsistency. The O&A awards the Plaintiff $80,346.00 in costs and expenses [Doc. 43-6 at 7 ¶ 5], and the Supplemental O&A states "that amount of $80,346.00 is payable if the parties agree to accept the terms of the [Opinion and Award] and perform them or when Judge Reidinger confirms the Award and enters judgment upon it, not before." [Doc. 43-6 at 8-9 ¶ 1]. In so doing, the Arbitrator was simply reiterating the necessity for the Plaintiff to obtain confirmation of the O&A before the award of costs and expenses could be enforced. The Arbitrator also made clear that the award of "costs and attorney's fees to [Plaintiff] is completely separate and apart from the payment of any commission or other funds by [Defendants], incidental to the sale contract with PABL." [Id.]. To the extent that the Plaintiff attempts to argue that the deadline provided for the payment of costs and expenses creates an ambiguity regarding the timing of the payment of the 4% award, such argument is rejected.

For these reasons, the Court finds that no further clarification of the arbitration award is necessary. Accordingly, the Plaintiff's motion for remand is denied.

Having reviewed the O&A, as supplemented, and having found no reason to remand this matter to the Arbitrator for further clarification, the Court concludes that the arbitration award should be confirmed.

**IT IS, THEREFORE, ORDERED** that:

(1)    Plaintiff's "Motion for Confirmation of Arbitrator's Award" [Doc. 43] is **GRANTED**, and the arbitration award, as supplemented, is hereby **CONFIRMED**. In accordance with the confirmation of the final arbitration award, the Plaintiff Raymond V. Bowers shall have and recover against the Defendants Northern Two Cayes Company Limited and Lighthouse Reef Resort Limited a sum equal to 4% of any dollar amount heretofore paid by Puerto Azul Belize, Ltd. ("PABL") to the Defendants as a deposit, binder, security for option or other funds intended by those parties to be a portion of the total consideration paid for the sale of the two islands, and which funds have been retained by the Defendants notwithstanding failure of the transaction to close. In addition to the foregoing relief, the Plaintiff shall have and recover against the Defendants the sum of $80,346.00 as

reimbursement of costs and expenses including attorneys' and legal fees, pursuant to the provisions of paragraph 26 of the Listing Contract.

(2)    Plaintiff's "Motion for Remand to Arbitrator for Clarification of Remaining Ambiguities" [Doc. 43] is **DENIED**.

(3)    Plaintiff's "Motion for Consideration of New Facts and Need for Making Judgment" [Doc. 46] is **DENIED**.

(4)    Within fourteen (14) days of the entry of this Order, the parties shall confer with each other in an effort to provide a stipulation to the Court of the amount paid by PABL and retained by the Defendants so that a judgment in favor of the Plaintiff can be entered.  If the parties cannot so stipulate, they shall, within thirty (30) days of the entry of this Order, file supplemental briefs, not to exceed five (5) pages, along with any evidence for the Court to consider regarding the amount paid by PABL.  The Court may then consider whether remand to the arbitrator is necessary on this limited issue.

**IT IS SO ORDERED.**

Signed: September 27, 2017

Martin Reidinger
United States District Judge